IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **R.W. a minor by and through his p/n/g, CHRISTINA WHITEHOUSE**, <br><br> Plaintiff, <br><br> *v.* <br><br> **C.L., a minor, through his p/n/g/ REBEKAH FLUCK, et al.**, <br><br> Defendants. | **CIVIL ACTION** <br><br> **NO. 25-714-KSM** |

**MEMORANDUM**

**MARSTON, J.**                                                                                                  **August 22, 2025**

Plaintiff R.W., by and through his parent and natural guardian, Christina Whitehouse, brings this action against Defendant C.L., through his parent and natural guardian, Rebekah Fluck, as well as Defendants Rebekah Fluck, Rose Tree Media School District (the "School District"), and Springton Lake Middle School ("Springton Lake") to recover damages for serious and permanent injuries he allegedly sustained from a physical assault by C.L. in the boys' locker room at Springton Lake. (Doc. No. 1.) Plaintiff asserts an assault and battery claim against C.L., a negligence claim against Rebekah Fluck, and state-created danger claims under 42 U.S.C. § 1983 against the School District and Springton Lake (together, "School Defendants"). School Defendants move to dismiss the § 1983 claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. Nos. 10, 13.) Plaintiff opposes the motion. (Doc. No. 12.) For the reasons discussed below, the Court grants School Defendants' motion.

I.  **FACTUAL BACKGROUND**

Accepting the allegations in the Complaint as true, the relevant facts are as follows.[1] In February 2023, Plaintiff and C.L. attended Springton Lake, a public school within the Rose Tree Media School District. (Doc. No. 1 ¶¶ 4, 10.) On the morning of February 9, 2023, Plaintiff and C.L. entered the boys' locker room at Springton Lake to access their lockers for gym class in accordance with school policy. (*Id.* ¶¶ 10, 24.) While in the locker room that morning, C.L. verbally confronted and then physically assaulted Plaintiff, which lasted for an "extended period" until C.L. was pulled away by another student. (*Id.* ¶¶ 26–27.) As a result of C.L.'s assault, Plaintiff suffered serious and permanent physical injuries, including a concussion; post-concussion syndrome; severe facial lacerations and contusions; severe lip and mouth trauma; and multiple broken and/or displaced teeth. (*Id.* ¶ 26.)

There was no video surveillance in the boys' locker room. (*Id.* ¶ 12.) Nor was there any adult supervision in the locker room on the morning of February 9, which was "often the case." (*Id.* ¶ 25.) Before this incident, multiple student fights and assaults had occurred in that locker room, and C.L. had exhibited and was disciplined for violent behavior at school. (*Id.* ¶¶ 11, 19; *see id.* ¶ 23.)

II.  **PROCEDURAL HISTORY**

Plaintiff filed this action alleging assault and battery against C.L., negligence against Rebekah Fluck, and, as is relevant to the instant motion, a deprivation of his Fourteenth Amendment rights under the state-created danger theory against the School Defendants. (Doc. No. 1.) The School Defendants filed the instant motion to dismiss on March 12, 2025. (Doc.

---

[1] "The District Court, in deciding a motion under Fed. R. Civ. P. 12(b)(6), [i]s required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Nos. 10, 13.)  Plaintiff opposes the motion with respect to his claim against the School District.  (Doc. No. 12.)  But Plaintiff agrees that the Court should dismiss his claim against Springton Lake because it is not a separate legal entity from the School District that can be sued.  (Doc. No. 12 at 1 n.1; *see* Doc. No. 10-1 at 1.)

### III. LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  And a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).  Although the court must accept as true the allegations in the complaint and all reasonable inferences therefrom, *Phillips*, 515 F.3d at 228, the court is not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation," *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (internal quotation omitted).

IV.     **DISCUSSION**

Plaintiff brings his claims against the School Defendants under 42 U.S.C. § 1983, which imposes civil liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Because Plaintiff and the School Defendants agree to the dismissal of Plaintiff's § 1983 claim against Springton Lake, the Court addresses the plausibility of Plaintiff's § 1983 claim against the School District only. The Court then turns to Plaintiff's state law claims against C.L. and Rebekah Fluck, over which the Court has supplemental jurisdiction by virtue of Plaintiff's related § 1983 claims.

   A.    **Plaintiff's State-Created Danger Claim against the School District**

"The threshold question in any § 1983 lawsuit is whether the plaintiff has sufficiently alleged a deprivation of a constitutional right." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016). Here, Plaintiff premises his § 1983 claim against the School District on violations of the Due Process Clause of the Fourteenth Amendment, which "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Id.* at 241 (3d Cir. 2016) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Because the purpose of the Due Process Clause is "to protect people from the State, not to ensure that the State protect[s] [people] from each other," the Clause does not require states "to protect the life, liberty, and property of [their] citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–96 (1989). So, the general rule in this context is that a public school district is not constitutionally obligated to protect its students from student-on-student violence and thus cannot be held liable under 42 U.S.C. § 1983 when such violence occurs.

4

But there is a "stated-created danger" exception to this general rule, which Plaintiff invokes in this action. Under this exception, a state actor can be liable for violating the Due Process Clause "when state authority is affirmatively employed in a manner than injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" *Bright v. Westmoreland County*, 443 F.3d 276, 282 (3d Cir. 2006) (quoting *Schieber v. City of Philadelphia*, 320 F.3d 409, 416 (3d Cir. 2003)). A plausibly pleaded state-created danger claim requires four elements:

1. the harm ultimately caused was foreseeable and fairly direct;

2. a state actor acted with a degree of culpability that shocks the conscience;

3. a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4. a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*L.R.*, 836 F.3d at 242.

In its motion to dismiss, the School District challenges only the sufficiency of Plaintiff's allegations as to the fourth element of his state-created danger claim. (*See generally* Doc. No. 10-1.) It argues that the Complaint merely alleges a *failure* to act—i.e., the School District's maintenance of a dangerous environment in the boys' locker room that lacked protective measures like adult supervision or video surveillance—rather than any *affirmative* act that created or increased the risk of danger to Plaintiff. (*Id.* at 4–9; Doc. No. 13 at 3–4.) Plaintiff, in response, contends that the Complaint alleges two affirmative acts on the part of the School District—(1) deciding to refrain from implementing supervision and surveillance in the boys'

5

locker room and (2) forcing students, including Plaintiff, to use the boys' locker room without any supervision or surveillance. (Doc. No. 12 at 4–5.)

Both parties' arguments reflect "the inherent difficulty in drawing a line between an affirmative act and a failure to act" when analyzing the sufficiency of a state-created danger claim. *L.R.*, 836 F.3d at 242 ("Often times there is no clear line to draw; virtually any action may be characterized as a failure to take some alternative action."). Recognizing this difficulty, the Third Circuit has established a two-step analysis to determine the sufficiency of the fourth element of a state-created danger claim as pleaded, which requires the court to (1) "evaluate the setting or the 'status quo' of the environment before the alleged act or omission occurred," and (2) "ask whether the state actor's exercise of authority resulted in a departure from that status quo." *See L.R.*, 836 F.3d at 243; *K.W. v. Se. Pa. Transp. Auth.*, 760 F. App'x 104, 108–09 (3d Cir. 2019).

At step one, the Court first determines the operative "status quo" against which to evaluate the School District's alleged exercise of authority. Plaintiff and the School District disagree about the scope of the setting that constitutes the status quo here. Plaintiff characterizes the status quo as a "supervised environment," which the Court understands to mean the other areas at Springton Lake aside from the boys' locker room, a departure from which resulted when the School District allegedly forced Plaintiff to use the unsupervised boys' locker room. (Doc. No. 12 at 5–7.) But the School District describes the status quo as a consistently unsupervised boys' locker room with no video surveillance, as alleged in the Complaint. (Doc. No. 13 at 3–4.) The Court agrees with the School District's characterization.

The Court looks to the allegations in the Complaint to determine the status quo. *See, e.g.*, *K.W.*, 760 F. App'x at 108–09 ("Plaintiffs' claim that 'the status quo . . . is the placement of safe

6

vehicles into operation" misconstrues the 'status quo' approach.  According to the Amended Complaint, the status quo here was the use of buses with a particular mirror configuration allegedly known to obstruct the driver's view."); *Son v. Del. Cnty. Intermediate Unit*, No. 23-cv-5177, 2024 WL 4680036, at *3 (E.D. Pa. Nov. 5, 2024) ("[V]iewing the Amended Complaint as a whole, it is clear that the gist of Plaintiff's allegations is that the status quo at DCIU Education Center was a dangerous environment from which DCIU failed to protect Plaintiff.").  Plaintiff's Complaint and state-created danger claim are focused entirely on the boys' locker room at Springton Lake and lack any allegations regarding the nature or scope of the supervision and/or surveillance at Springton Lake outside of the boys' locker room.  (*See generally* Doc. No. 1.)  Thus, Plaintiff's characterization of the relevant status quo at Springton Lake as a "supervised environment," which fails to account for the boys' locker room, is inaccurate.  The Court must consider the boys' locker room for purposes of establishing the status quo alleged in the Complaint.

Plaintiff alleges that there was no video surveillance and rarely any adult supervision in the boys' locker room at Springton Lake.  (*Id.* ¶¶ 12, 25.)  Plaintiff also alleges that there were multiple instances of "fights between students and/or student-on-student assaults" in that locker room prior to February 9, 2023, the date of C.L.'s assault of Plaintiff.  (*Id.* ¶ 11.)  And last, Plaintiff alleges that school policy, which was in effect prior to and on February 9, required students at Springton Lake to use the locker room for purposes of accessing their lockers in connection with gym class.  (*Id.* ¶¶ 18, 24.)  With respect to C.L., Plaintiff alleges that C.L. had a history of violent behavior at school about which the School District knew and in response to which the School District failed to take appropriate remedial measures such as adequate supervision or one-on-one counseling.  (*Id.* ¶¶ 19, 22.)  Based on these allegations, the Court

reasonably concludes that the Complaint establishes a twofold status quo at Springton Lake: (1) the maintenance of a typically unsupervised boys' locker room that lacked any video surveillance at Springton Lake, which they required students to use for gym class; (2) the awareness of C.L.'s history of violent behavior at school and the inability and/or unwillingness to implement effective preventative measures in response to C.L.'s behavior.

At step two, the Court assesses whether the School District's "exercise of authority," i.e., requiring—or, as Plaintiff alleges, "forcing"—Plaintiff to access the boys' locker room with C.L. at Springton Lake for gym class on February 9, 2023 without any supervision or surveillance, "resulted in a departure" from this status quo. The Court finds that it did not.

As alleged, Plaintiff faced a "dangerous condition" at Springton Lake prior to February 9, 2023, due to his and all other Springton Lake male students' required use of the boys' locker room that had no video surveillance and rarely any adult supervision, despite the occurrence of multiple student fights and assaults in that locker room and C.L.'s history of violent behavior exhibited at school. Thus, when the School District "forced" Plaintiff to use that locker room at the same time as C.L. for gym class without any video surveillance or adult supervision on February 9, it was simply perpetuating that dangerous condition. This "maintenance of a situation that was already dangerous" does not amount to an affirmative misuse of authority for purposes of establishing a state-created danger claim against the School District. *See, e.g.*, *L.R.*, 836 F.3d at 243–44 (contrasting defendants' conduct that "resulted in a drastic change to the classroom status quo" because it "exposed [plaintiff] to a danger she would not otherwise have encountered" and thus amounted to an affirmative misuse of state authority from "maintenance of a situation that was already dangerous" that is insufficient to create liability for state-created danger); *Montanez-Johnson v. Chester Upland Sch. Dist.*, 762 F. Supp. 3d 433, 438–39 (E.D. Pa.

2025) ("Montanez-Johnson faced a significant risk of harm by virtue of living in Chester, and the School District simply maintained that status quo by allowing students to enter the school unscreened."); *Son*, 2024 WL 4680036, at *3 ("[I]t is clear that the gist of Plaintiff's allegations is that the status quo at DCIU Education Center was a dangerous environment from which DCIU failed to protect Plaintiff.  The maintenance of this dangerous status quo does not suffice to create liability."); *see also Pagan v. City of Philadelphia*, No. 11-cv-5178, 2012 WL 1965386, at *5 (E.D. Pa. May 31, 2012) ("The Third Circuit has rejected state-created danger claims in cases involving student-on-student school violence, even when school officials were alleged to have known of dangerous conditions within the school or in a particular classroom.").

Relying on the Third Circuit's decision in *L.R.*, Plaintiff contends that "[f]orcing a student from a supervised environment into an unsupervised environment is an affirmative act that disrupts the 'status quo' of the student's environment." (*See* Doc. No. 12 at 5–7.)  This argument not only relies on a mischaracterization of the "status quo" at Springton Lake but also misconstrues the nature of the departure of the status quo in *L.R.* that the Third Circuit held was a sufficiently pleaded affirmative use of state authority that created or increased the risk of danger.

In *L.R.*, the Third Circuit analyzed the sufficiency of a state-created danger claim brought by the parent of a kindergarten student who was released from her classroom into the custody of an unidentified adult who, later that day, sexually assaulted the student.  836 F.3d at 239–40.  The Third Circuit determined that the status quo was a "kindergarten classroom where students presumably were safe from outside dangers" not just because the students are generally "closely supervised" by their teacher but, more specifically, because their teacher "acts as [their] gatekeeper . . . about when and with whom to leave the classroom." *Id.* at 243.  In accordance with that gatekeeping function, the kindergarten teacher was required under school policy to

9

obtain "identification and verification that [any student] had permission to leave school" from any adult seeking the release of a student. *Id.* at 240, 243. Because the student's teacher departed from that status quo by allowing the student to leave the classroom with an adult who failed to produce the requisite identification or verification, the Third Circuit concluded that he "exposed [the student] to a danger she would not otherwise have encountered" and thus "created or increased the risk of harm itself." *Id.* at 243–44 (internal quotation omitted). In other words, it was the teacher's departure from the status quo of a supervised kindergarten classroom that only permitted the release of its students to adults who provide the required identification and verification that rendered his conduct an affirmative misuse of state authority. It was not, as Plaintiff suggests, the mere departure from the supervised environment of the kindergarten classroom to the unsupervised environment outside of the classroom.

In contrast, the School District's alleged conduct on February 9 did not expose Plaintiff to any danger or risk thereof that he would not have otherwise encountered in the status quo environment at Springton Lake. Rather, "the contested actions here amount to complaints about the status quo," i.e., the "dangerous condition" of students' required use of the boys' locker room without any video surveillance or consistent adult supervision at Springton Lake despite past histories of student-on-student violence in that locker room and C.L.'s violent behavior at school. *Son*, 2024 WL 4680036, at *3 (finding that plaintiff's allegations that defendant placed plaintiff with students without warning or sufficient supervising staff, which caused a student attack on plaintiff, "fall short of meeting the affirmative act requirement" for a state-created danger claim when considered amidst the allegations that defendant was chronically understaffed and had a long history of student attacks on other students and staff members); *see Montanez-Johnson*, 762 F. Supp. 3d at 438 ("At the status quo ante—the moment before he was allowed into school that

day—Montanez-Johnson faced a significant risk of danger.  Montanez-Johnson pleads no factual allegations to suggest that this risk of danger increased on account of the School District's decision to let him and the other students, including his attacker, into school.").

"The state-created danger theory gives succor to individuals who are exposed to harm by government conduct; it does not create a right of action in every case where the government 'might have done more to protect a citizen from a risk of harm' the citizen already faced." *Montanez-Johnson*, 762 F. Supp. 3d at 439 (quoting *Morrow v. Balaski*, 719 F.3d 160, 186 (3d Cir. 2013) (Ambro, J., concurring in part and dissenting in part)).  Though serious and troubling, Plaintiff's allegations against the School District do not suffice to establish that the School District affirmatively used its authority in a way that created a danger to Plaintiff or rendered him more vulnerable to danger than had it not acted at all.  The Court thus finds that Plaintiff has failed to plausibly plead a state-created danger claim under § 1983 against the School District and dismisses this claim.

Because "any attempt to distill a state-created danger claim [against the School Defendants] from the facts of this case 'would fail to state a claim upon which relief could be granted,'" the Court dismisses Plaintiff's state-created danger claims with prejudice.  *Id.* at 440 (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("Among the grounds that could justify a denial of leave to amend are . . . futility.  'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." (internal quotation and citations omitted))); *see Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (concluding that the court must allow amendment of a deficient complaint "unless amendment would be inequitable or futile").

### B. Plaintiff's State Law Claims against C.L. and Rebekah Fluck

In addition to his federal § 1983 claims against the School Defendants, Plaintiff brings two state law claims against C.L. (assault and battery) and his parent, Rebekah Fluck (negligence). (*See* Doc. No. 1 ¶¶ 31–40.) The Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a) because "they are so related" to the § 1983 claims, over which the Court has original "federal question" jurisdiction pursuant to 28 U.S.C. § 1331, that they form "part of the same case or controversy." However, the Court may decline to exercise supplemental jurisdiction over state law claims where, as here, all claims over which it has original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3). Indeed, the Third Circuit has held that "where the claim[s] over which the district court has original jurisdiction [are] dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 4 F.3d 780, 788 (3d Cir. 1995) (emphasis added)). As neither the parties nor the Court have identified any such considerations, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses these claims without prejudice to Plaintiff's right to refile them in state court.

### V. CONCLUSION

For the foregoing reasons, the Court grants School Defendants' motion to dismiss and dismisses Plaintiff's § 1983 claims with prejudice and Plaintiff's state law claims without prejudice. An appropriate Order follows.